87 U.S. 517
 22 L.Ed. 421
 20 Wall. 517
 UNITED STATES
v.
GILL.
 October Term, 1874
 
 1
 APPEAL from the Court of Claims; the case as found by that court being thus:
 
 
 2
 I. In November, 1864, A. J. Gill was owner of five hundred and thirty-six tons of hay, at Point of Rocks, near Fort Fillmore, in the Territory of Colorado. On the 27th November, 1864, he applied to Lieutenant Dunn, the commanding officer at the fort, to purchase the same for the use of the United States. Dunn declined to make any such purchase, stating that he was not authorized to do so, but he gave to Gill his receipt in writing, wherein it was stated that he had 'received of A. J. Gill five hundred and thirty-six tons of hay, in good order and well ricked, for the use of the government,' and he at the same time referred Gill to the commander of the district and to the quartermaster at Denver, who could purchase the hay if they saw fit. The commander of the district was applied, to, but declined to purchase it that time. During the same month the military inspector of the district of Colorado, anticipating a short supply of hay for the winter, ordered the quartermaster of Fort Lyon 'to take the hay belonging to A. J. Gill and use it for government stock.' After this Gill exercised no control over the hay. He left Colorado on the 4th February, 1865, on business of his own, and did not return until the summer of 1866. In consequence of Indian troubles then existing it was unsafe for small parties to remain outside of government posts, and he was compelled to leave the hay without any one in charge of it; but in July, 1865, his agent visited the place and found the entire five hundred and thirty-six tons gone. The claimant did not abandon or intend abandonment of the hay, and at the time he left the Territory it had gone into government use, as set forth in what is now next stated.
 
 
 3
 In December, 1864, and during the winter 1864-65 the quartermaster and foragemaster at Fort Lyon directed government trains to go to the hay and quarter there. A military expedition having about two thousand horses was also quartered there, and used the hay. In the spring, about one-half of the hay had been given to government animals, about one-quarter had been thrown out of the ricks, trampled down, wasted, and destroyed and about one-quarter remained in the ricks, though in a worthless condition.
 
 
 4
 After Lieutenant Dunn was relieved at Camp Fillmore, his successor, Lieutenant Dennison, assumed the responsibility of the custody of the hay, and in June, 1865, the post commander at Fort Lyon ordered the quartermaster there to receive the rest of the hay remaining, so as to relieve Lieutenant Dennison from responsibility. A board of survey being demanded, it was found that the rest was spoiled and worthless, and no receipt was given or responsibility assumed by the post quartermaster.
 
 
 5
 II. The value of the hay in November, 1864, was $38.50 per ton, and during the winter, at the time it was used, $45 a ton.
 
 
 6
 Upon the foregoing case the Court of Claims decided, as a conclusion of law——
 
 
 7
 That there being no valid express contract founded upon advertisement or military exigency for the sale and purchase of the hay, the government was not liable for the entire quantity sold in November, 1864, at $38.50 per ton; but was liable for the hay taken and used, at its fair and reasonable value at the time of taking; and responsible for the wasteful and destructive manner in which it was taken and used; and that Gill should recover for three-fourths of the entire quantity ricked, at the rate of $45 a ton. It accordingly gave judgment in his favor for $18,090. The government brought the case here.
 
 
 8
 
 Mr. G. H. Williams, Attorney-General, and Mr. John Goforth, Assistant Attorney-General, for the appellant:
 
 
 
 9
 1. There having been no valid express contract founded upon advertisement,[1] nor any military emergency,[2] the defendants were not liable for the hay alleged to have been sold, if the taking was not a trespass by government troops. The refusal of the district commander to receive the hay was a notice to him as well as to all officers and agents of the defendants that the hay would not be purchased for the use of the government animals. The direction of the district inspector to the post quartermaster at Fort Fillmore to use the hay was illegal and of no effect, as it was not within the line of his duty or within his power to declare an emergency.
 
 
 10
 2. If the hay was taken and used by order of an officer without authority to act, or by government troops and parties without the claimant's knowledge and consent, and when he had left the Territory, much more if they scattered and trampled it under foot, it was a trespass, and the Court of Claims had no jurisdiction of the case.[3]
 
 
 11
 3. The taking and using of the hay by the government troops and parties was an 'appropriation within the act of July 4th, 1864,'[4] and the Court of Claims has no jurisdiction of the action.[5]
 
 
 12
 4. The memorandum receipt given to claimant by Lieutenant Dunn was not binding upon the United States, there being no delivery or acceptance of the hay; but, on the other hand, the receipt of it having been accompanied by a statement by Dunn that he was not authorized to make the purchase, and the receipt being given as an accommodation to the owner in order that the district commander might know that he, Dunn, was cognizant of the fact that the owner had five hundred and thirty-six tons of hay cut and ricked in the vicinity of Fort Fillmore.
 
 
 13
 If judgment was to be given for the owner at all it should have been at the rate of $38.50 per ton, and no more. It was improper for the court to rate it as worth $45 per ton.
 
 
 14
 Messrs. T. J. Durant and C. W. Hornor, contra.
 
 The CHIEF JUSTICE:
 
 15
 Upon the facts found, we think the judgment should have been for the value of the hay in November, 1864, to wit: $38.50 per ton, instead of $45, its value during the winter. To this extent the Court of Claims erred. The judgment is therefore REVERSED, and the cause remanded, with instructions to enter a new judgment
 
 
 16
 IN ACCORDANCE WITH THIS OPINION.
 
 
 
 [1]
 Act 2d March, 1861, 12 Stat. at Large, 220.
 
 
 [2]
 Act 4th July, 1864, 13 Id. 394.
 
 
 [3]
 Gibbons v. United States, 8 Wallace, 269.
 
 
 [4]
 13 Stat. at Large, 381.
 
 
 [5]
 Filor v. United States, 9 Wallace, 45.